IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Ned James, 3rd (K-91930), | ) |
| Plaintiff, | ) |
| | ) Case No. 16 C 8986 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| Elizabeth Perez, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ned James III, a Pontiac Correctional Center inmate, filed this 42 U.S.C. § 1983 civil rights action against Stateville Correctional Center Officer Elizabeth Perez. James asserts Perez acted with deliberate indifference when she: (1) refused him cleaning supplies to mop up water in his cell from another inmate's overflowing toilet and (2) refused to obtain medical attention for him after he slipped on the water, hit his head, and passed out. Currently before this Court is Perez's motion for summary judgment, wherein she argues that James' injury was not sufficiently serious for a constitutional claim and that she did not act with deliberate indifference to it. James has responded to the motion. He also filed motions to strike Perez's reply and to submit additional evidence. For the following reasons, the Court denies both parties' motions.

### SUMMARY JUDGMENT STANDARD

**Federal Rule of Civil Procedure 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials

in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted) (emphasis in original).

When considering a summary judgment motion, courts "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Courts may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence, *i.e.*, evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

**N.D. Ill. Local Rule 56.1**

In addition to Federal Rule of Civil Procedure 56, this Court's local rules require a party moving for summary judgment to submit a Statement of Material Facts "consist[ing] of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts

of the record, and other supporting materials." N.D. Ill. Local Rule 56.1(a). Under the local rules, the non-movant must respond "to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits [and other] parts of the record." Local Rule 56.1(b)(3)(A)-(B). If the non-movant seeks to present its own facts, it must submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C). The Court's local rules further state: "All material facts set forth in the statement required of the moving party [or the statement submitted by the non-moving party] will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C) and (a)(3).

In this case, Perez submitted a Statement of Material Facts ("SOF") in accordance with Local Rule 56.1(a). (Doc. 44.) The factual assertions therein cite to the record (James' deposition, Perez's declaration, Dr. Aguinaldo's declaration, etc.) and, for the most part, are supported by the cited materials. (*Id.*) James responded to Perez's summary judgment motion and her Memorandum of Law in support of her motion. (Doc. 47, 48.) He also submitted his own declaration presenting his version of the facts. (Doc. 49.) He did not, however, respond to Perez's Rule 56.1 Statement, even though a Rule 56.2 Notice to Pro Se Litigants explaining how to respond was included with Perez's summary judgment materials. (Doc. 45.)

This Court could deem admitted all of Perez's Rule 56.1 factual assertions supported by the record. The Court could also disregard James' factual assertions in his declaration, which does not comply with Rule 56.1(b)(3)(C). *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) ("The district court's discretion to require strict compliance with Local Rule 56.1 has been upheld time and again.") (citations omitted); *see also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th

3

Cir. 2014) ("Because Petty had the opportunity to comply with Local Rule 56.1 but chose not to, the district court did not abuse its discretion by striking those additional facts."). James has filed many suits in federal court and is no stranger to the importance of following court rules.

But in this case, many of the facts come from each party's declaration. (Doc. 43-4, 49.) To consider only Perez's declaration, disregard James', and grant summary judgment based only on her facts (if they support summary judgment) seems unfair. "[W]hether to apply the rule (Rule 56.1) strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Courts review pleadings by *pro se* litigants liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). And where a *pro se* plaintiff is responding to a motion for summary judgment, this Court "has considered the factual assertions he makes . . . to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted." *Becerra v. Kramer*, No. 16 C 1408, 2017 WL 85447, at *2 (N.D. Ill. Jan. 10, 2017); *see also Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *Tompkins v. Whiteside County Jail*, No. 15 C 50206, 2017 WL 3167658, at *3 (N.D. Ill. July 26, 2017); Fed. R. Evid. 602.

The Court therefore will recite the facts in Perez's Local Rule 56.1(a)(3) statement—modified when necessary where the statement inaccurately characterizes the cited material—and James' factual assertions about which he could properly testify at trial, and then determine whether, on those facts, Perez is entitled to summary judgment. With these standards in mind, the Court turns to the facts of this case.

# FACTS

In April of 2016, James was housed at Stateville's Northern Reception and Classification Center ("NRC"). (Doc. 44, Perez SOF ¶ 1.) Perez was an officer in the NRC at that time. (*Id.* at ¶ 2.) On April 3, 2016, James was housed in cell 103 in the C-wing, NRC's segregation unit. (*Id.* at ¶ 5.) The nearest occupied cell to him was cell 106. (*Id.* at ¶ 6.) The cells in James' unit, in fact all NRC cells, have doors as opposed to bars. James could not see the cells around him and he could not stick his arm out of the cell unless he used the chuckhole. (*Id.* at ¶ 7) (citing Doc. 43-3, James Dep. 62-63.)

On the night of April 3-4, 2016, there was a mass disturbance in the C-wing. Inmates kicked their doors and threw feces out of their chuckholes. (Doc. 44, Perez SOF ¶ 8.) According to the disciplinary ticket Perez wrote against James, he told other inmates to refuse to close their chuckholes and to "fuck those C/Os up, and throw shit in their face." (*Id.* at ¶ 9, quoting Doc. 43-3, James' Dep. at 121.) Perez further stated in her disciplinary report that James kicked his cell door for hours and said "fuck that bitch (Perez) up." (Doc. 44 at ¶ 9, quoting Doc. 43-4, Perez's Decl.) Following a hearing before Stateville's Adjustment Committee, James was found guilty of all disciplinary charges arising from the disturbance. (Doc. 44, Perez SOF at ¶ 10.)

Earlier that evening, toward the end of the 3-11 pm shift on April 3, the inmate in the cell above James' flooded his toilet, causing water and sewerage to run down into James' cell. (*Id.* at ¶ 11.) According to James, he asked Perez to have his cell cleaned. (*Id.* at ¶ 12.) She refused. (*Id.*; *see also* Doc. 49, James Decl. ¶¶ 4-5.) James attempted to clean the cell himself. While cleaning, he slipped, hit his head, and was knocked unconscious. (*Id.* at ¶ 13.) According to James, he regained consciousness briefly and asked an inmate in a nearby cell to get him medical

5

attention. (*Id.* at ¶ 15.) He also called for Perez, who he believed was in her office, but he did not see her. (*Id.* at ¶ 16.) James lost consciousness again and did not awake until the morning shift. (*Id.* at ¶ 17.)

Although James alleged in his complaint that Perez walked by his cell and saw him lying unconscious on the floor, because he was unconscious, he did not see Perez pass by his cell. (*Id.* at ¶¶ 19-20.) He acknowledges that he has no first-hand knowledge whether or not she ignored him. (*Id.* at ¶ 18.) James contends, however, that he was unconscious for an extended period of time, possibly hours, and Perez was required to make rounds and look inside each inmate's cell every 30 minutes. (Doc. 49, James Decl. ¶ 6.)

James was discovered by an officer on the 7am-3pm shift and was taken to the Health Care Unit ("HCU") by wheelchair. (*Id.* at ¶ 22; Doc. 49, James Decl. ¶¶ 7-8.) Dr. Aguinaldo examined him. (Doc. 44 at ¶ 22.) Dr. Aguinaldo's notes from that examination state James reported slipping and hitting his head, but that he was alert and appeared to be in no distress at the time of the exam. (*Id.* at ¶ 23, citing Doc. 43-5 and 43-6 (Dr. Aguinaldo's Declaration and Outpatient Progress Notes from 4/4/16.)) Dr. Aguinaldo observed a slight redness above James' right eye, which was a little tender. But he saw no swelling. (Doc. 44, ¶ 24.) Dr. Aguinaldo prescribed ten days of Robaxin, a muscle relaxer, and "[o]ut of an abundance of caution, [he] also referred Mr. James for X-rays." (*Id.* at ¶ 25, quoting Doc. 43-5, Dr. Aguinaldo Decl. ¶ 17.) James' x-rays were normal and revealed no abnormalities. (Doc. 44, ¶ 26.)

James filed a complaint with Internal Affairs about Perez's actions and inactions on April 3-4, 2016. (Doc. 49, James Decl. ¶ 9.) According to James, Internal Affairs Officer Sullivan told James that Sullivan had watched video footage from that night and saw that Perez never stopped

6

at James' cell to check on him or give him breakfast. (*Id.*; *see also* Doc. 54, James' Motion to Submit New Evidence.) James states Sullivan further told James that he would "explain the situation to the Honorable Judge on defendant Perez['s] misconduct." (Doc. 54 at ¶ 3.)

Responding to James' motion to submit new evidence, Perez has submitted a declaration from Sullivan stating that he is familiar with James "because [Sullivan] regularly dealt with [James] in [his] role in Internal Affairs at NRC"; that he saw James sitting on a bench at IDOC Headquarters at the end of July of 2018; and that, though they "exchanged pleasantries," Sullivan discussed nothing substantively. (Doc. 55, Sullivan Decl. ¶¶ 5-8.) According to Sullivan, James mentioned that he had a case against Officer Perez about her not feeding him, but Sullivan has "no independent recollection of Ms. Perez's involvement with Mr. James during his time at the NRC." (*id.* at ¶ 11.) Sullivan states he did not offer to speak or explain anything to the Court. Nor did he tell James to speak to the Court on his behalf. Sullivan is not aware of any video footage of the night in question. (*Id.* at ¶¶ 13-19.)

## DISCUSSSION

In its order conducting an initial review of James' amended complaint, the Court allowed him to proceed with two claims: (1) Perez acted with deliberate indifference when she refused to provide James with any supplies to clean up sewerage water in his cell, and (2) Perez acted with deliberate indifference to James' serious medical needs when she allowed him to remain on the floor of his cell unconscious for an extended period of time. (Doc. 12, Order of 2/14/17.) Perez's motion for summary judgment addresses only the second claim—deliberate indifference to James' medical needs. Thus, regardless of the Court's decision on Perez's summary judgment

motion, this case will continue with James' claim that Perez disregarded his request to clean water and feces in his cell from another cell's overflowing toilet.

As to the claim of deliberate indifference to James' medical condition, the Court cannot grant summary judgment. The Eighth Amendment's proscription against cruel and unusual punishment "is violated when prison officials demonstrate deliberate indifference to serious medical needs of prisoners—whether the indifference 'is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care.'" *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). To prevail on this claim, James must prove both: "that his medical condition [wa]s 'objectively, sufficiently serious,' and . . . that prison officials acted with a 'sufficiently culpable state of mind,' (citations omitted)—i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis*, 864 F.3d at 562–63 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Disputed issues of material fact exist for the second element of James' claim—whether Perez deliberately ignored James lying unconscious on his cell floor for an extended period of time, or whether James was instead kicking his cell door for hours and urging other inmates to join in the disturbance. Each party presents his or her own declaration with conflicting versions of the facts. Though James acknowledges that he does not know what Perez did or did not do while he was unconscious, he states that he was passed out for several hours, that Perez is required to check each inmate's cell every 30 minutes during her shift, and that he received no assistance until an officer from the 7am-3pm shift discovered him, put him in a wheelchair, and rushed him to the Health Care Unit.

The Court further notes that it is unclear if there is video footage of James' cell from the night in question. James contends a video exists and that Officer Sullivan told him it shows Perez walking by and ignoring James' cell. (Doc. 49 at ¶¶ 8-9; Doc. 54; *see also* Doc. 46, Order of 5/7/18—though the Court issued a protective order about photographs of NRC's C-wing, the record contains none.) Given the parties' conflicting versions as to what occurred during the evening and early morning hours of April 3-4, 2016, a trier of fact could conclude that Perez knew James was lying unconscious on his cell floor but did nothing.

But a claim of deliberate indifference to an inmate's medical needs has two elements. James must also prove that he had a serious medical condition. If the record establishes that his condition was not sufficiently serious, summary judgment may be granted for Perez. Ignoring an inmate's medical condition that is not serious does not violate the Constitution.

"A serious medical condition is one that 'has been diagnosed by a physician . . . or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Orlowski v. Milwaukee County*, 872 F.3d 417, 423 (7th Cir. 2017) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation marks omitted)). The condition "need not be life-threatening . . . [and] it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Orlowski*, 872 F.3d at 423. But not "every ache and pain or medically recognized condition" constitutes a serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (noting that, for example, the failure to treat a common cold is not deliberate indifference). The refusal to treat minor "ailments for which many people who are not in prison do not seek medical attention. . . does not . . . violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

Dr. Aguinaldo's examination of James at 7:45 a.m. on April 4, 2016 suggests that James' condition, at least at that time, was not serious. Dr. Aguinaldo observed that James was alert and appeared to be in no distress. He further observed only a slightly red area above James' right eye that was tender to the touch but not swollen. Nevertheless, the doctor noted that James had experienced some trauma during the night; prescribed Robaxin, a mild muscle relaxer; and "[o]ut of an abundance of caution, also referred Mr. James for X-Rays," which revealed no abnormalities. (Doc. 43-5, Aguinaldo Decl. ¶ 17.)

Perez contends that, at best, James' injury was minimal and insufficient to support a constitutional claim. She cites in support *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006). In *Pinkston*, an inmate's "split lip and swollen cheek," the results of a fight with another inmate, "d[id] not qualify as injuries that [we]re 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)). James' symptoms, however, were not noticeably minor. Reading the record most favorably to him, he was unconscious for an extended period of time, possibly hours. "[E]ven a lay person would easily recognize the necessity for a doctor's attention" for such a condition. *Pinkston*, 440 F.3d at 891. James' prolonged unconsciousness necessitated a doctor's attention, even if only to rule out conditions more serious than a slightly red, tender area above his eye.

"The point of the objective prong of the deliberate indifference test is to 'limit claims to significant, as opposed to trivial, suffering.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)). Even though James' condition may have turned out to be minor, viewing the record in his favor, he sustained a head injury that caused him to lose consciousness for hours. The Court cannot conclude that no

reasonable jury could find such a condition serious and wanting of medical attention. *See Reed v. Weber*, No. 10-4069-KES, 2010 WL 3363402, at *4 (D.S.D. Aug. 23, 2010) ("A head injury that knocks a person unconscious would qualify as a serious medical need."); *Regalado v. City of Chicago*, 40 F. Supp. 2d 1009, 1015 (N.D. Ill. 1999) ("Reasonable jurors could readily find that Regalado's unconscious state, even after repeated and vigorous attempts to awaken him, indicated a serious medical injury"); *see also Maddle v. Correctional Med. Servs., Inc.*, No. 3:05-0306, 2008 WL 839715, at *6 (M.D. Tenn. Mar. 26, 2008) (a mass that ultimately was determined to be benign was a serious medical condition since it required medical attention and a biopsy); *but see Lewis v. Sheridan*, No. 9:12-CV-31 GLS/DEP, 2014 WL 1096220, at *10 (N.D.N.Y. Mar. 19, 2014) (an officer who "waited twenty-five minutes before contacting medical personnel" for an unconscious inmate did not act with deliberate indifference since the inmate's injuries were not serious and he suffered no additional harm from the delay). Accordingly, the Court denies Perez's motion for summary judgment.

The Court notes, however, that although James may have a viable constitutional claim, what damages he can receive for the claim is questionable. Apart from the few moments of lucidness James allegedly experienced before he again lost consciousness, the record indicates he suffered no pain or discomfort from Perez's alleged inactions. But "[d]amages are not an element of liability in a deliberate indifference claim." *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012) (citing *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003)); *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) (a prisoner may file a § 1983 action even in absence of physical harm, as he may "obtain injunctive relief, nominal damages, and punitive damages"). James' claim of

deliberate indifference to a serious medical need, along with his claim of deliberate indifference to the unconstitutionally adverse condition of his cell, may proceed.

As to James' motions to strike Perez's reply and to add new evidence (his recent conversation with Internal Affairs Officer Sullivan), the motions are denied. The motion to strike is simply a sur-reply repeating James' reasons to deny summary judgment. It presents nothing about Perez's reply that is impermissible or any valid reason to strike it. As to James' motion to supplement the record, not only is James' account of the substance of the conversation questionable—given Sullivan's declaration contradicting James' assertions, (doc. 55)—but James' description of Sullivan's statements is inadmissible hearsay evidence. *See* Fed. R. Evid. 801. "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) (evidence about what a nontestifying witness said is hearsay). If James wants to introduce evidence regarding Officer Sullivan's investigations, James should obtain an affidavit, declaration, or other evidence directly from Sullivan. *Id.*

## CONCLUSION

For the reasons stated above, Defendant Perez's motion for summary judgment [43] is denied. Also denied are James' motions to strike Perez's reply and to add evidence to the record. [53, 54] The Court will set a status hearing in a separate order.

Date: 8/22/2018

**Jorge L. Alonso**
**United States District Judge**